UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| United States ex rel. KATHY COLAPINTO, | ) ) ) | CIVIL ACTION FILE NO. _____ |
| Plaintiff-Relator, | ) ) | |
| v. | ) ) | FILED *IN CAMERA* AND UNDER SEAL |
| EAR, NOSE & THROAT PLASTIC SURGERY CENTER, P.A., PERSAUD ENTERPRISES, ADVANCED AUDIOLOGY AND HEARING AID CENTER, INC., and NEIL PERSAUD, | ) ) ) ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) | |

## COMPLAINT

1. This is an action by *qui tam* Relator Dr. Kathy Colapinto ("Relator" or "Dr. Colapinto"), on behalf of herself and the United States Government, to recover penalties and damages from the false statements or records submitted or caused to be submitted by Ear, Nose, & Throat Plastic Surgery Center P.A., Persaud Enterprises, Inc., Advanced Audiology and Hearing Aid Center Inc., and Neil Persaud (collectively hereinafter, "Defendants"), to the United States Government in order to obtain payments of federal funds.

## JURISDICTION AND VENUE

2. This action arises under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* (the "FCA") and the Georgia False Medicaid Claims Act O.C.G.A. § 49-4-168.1.

3. This Court has subject matter jurisdiction over this matter pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1345, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

4. This Court has personal jurisdiction over the Defendants.

5. Venue is proper in this district under 28 U. S. C. §§ 1391(b), and 1391(c), and under 31 U.S.C. § 3732(a) and O.C.G.A. § 49-4-168.6. The Defendants can be found, reside, and transact business within the district, and the acts proscribed by the FCA occurred within the district.

6. Relator is entitled to and demands trial by Jury.

## PARTIES

7. Dr. Colapinto is a resident of Georgia and a United States citizen. Colapinto was employed by Defendants from February 2016 until July 2017. Dr. Colapinto is a licensed audiologist.

8. Defendant Neil Persaud ("Persaud") is a resident of Georgia. Persaud purports to be a Doctor of Osteopathic Medicine. Upon information and belief, Persaud owns and operates the businesses of Defendants Ear, Nose, & Throat

2

Plastic Surgery Center P.A., Advanced Audiology and Hearing Aid Center Inc., and Persaud Enterprises, Inc.

9. Defendant Persaud Enterprises, Inc. ("PE") is a Georgia Corporation and was formed on June 24, 2004. ENT's principal office is 6130 Prestley Mill Road, Suite C, Douglasville, Georgia, 30134.

10. Defendant Ear, Nose, & Throat Plastic Surgery Center P.A. (hereinafter "ENT") is a Georgia corporation created on February 26, 2018. On information and belief, ENT purports on its website to have operated offices in Georgia for over 15 years, including offices in Atlanta, Douglasville and Austell. ENT's principal office is 6130 Prestley Mill Road, Suite C, Douglasville, Georgia, 30134.

11. Defendant Advanced Audiology and Hearing Aid Center Inc. ("AAHAC") was formed on April 11, 2018. Upon information and belief, AAHAC operates at the same locations as ENT and is owned and operated by Persaud. AAHAC's principal office is 6130 Prestley Mill Road, Suite C, Douglasville, Georgia, 30134.

## GOVERNING REGULATIONS AND BACKGROUND

12. Title XVIII of the Social Security Act, 42 U.S.C. § 1395, *et seq.*, establishes the Health Insurance for the Aged and Disabled Program, popularly known as the Medicare program. The Secretary of the United States Department

of Health and Human Services ("HHS") administers the Medicare Program through the Centers for Medicare and Medicaid Services ("CMS"), a component of HHS.

13.  The Medicare program consists of several parts. Medicare Part A provides basic insurance for the costs of hospitalization and post-hospitalization care. 42 U.S.C. § 1395c-1395i-2. Medicare Part B is a federally subsidized, voluntary insurance program that covers certain non-hospital medical services and products including the treatments at issue in this complaint. 42 U.S.C. § 1395(k), 1395(i), 1395(s). Reimbursement for Medicare claims is made by the United States through CMS. CMS, in turn, contracts with private insurance carriers to administer and pay Medicare Part B claims from the Medicare Trust Fund. 42 U.S.C. § 1395(u). In this capacity, the carriers act on behalf of CMS. 42 C.F.R. § 421.5(b).

14.  In order to receive Medicare funds, enrolled suppliers, including Defendants, together with their authorized agents, employees, and contractors, are required to abide by all the provisions of the Social Security Act, the regulations promulgated under the Act, and all applicable policies and procedures issued by the states.

15.  Among the rules and regulations which enrolled suppliers, including Defendants, agree to follow are to: (1) bill Medicare Carriers for only those

covered services which are medically necessary; (2) not bill Medicare Carriers for any services or items which were not performed or delivered in accordance with all applicable policies, nor submit false or inaccurate information relating to provider costs or services; (3) not engage in any act or omission that constitutes or results in over-utilization of services; (4) be fully licensed and/or certified under the applicable state and federal laws to perform the services provided to recipients; (5) comply with state and federal statutes, policies and regulations applicable to the Medicare Program; and (6) not engage in any illegal activities related to the furnishing of services to recipients.

16. Medicaid is a joint federal/state program that provides care for indigent and disabled people. Although the Medicaid program is administered by the states, it is funded in a significant part by the federal government.

17. The Civilian Health and Medical Program of the Uniformed Services ("CHAMPUS") is a government-funded program that provides medical benefits to retired members of the Uniformed Services and to spouses and children of active duty, retired, and deceased members, as well as reservists who were ordered to active duty for thirty (30) days or longer. The program is administered by the Department of Defense and funded by the federal government.

18. The Civilian Health and Medical Program of the Veterans Administration ("CHAMPVA") provides similar benefits for spouses and children

of veterans who are entitled to VA permanent and total disability benefits to widows and children of veterans who dies of service-related disabilities. The program is administered by the Department of Defense and funded by the federal government.

19. At all times relevant to this Complaint, Defendants were participating Medicare, Medicaid, CHAMPUS, and CHAMPVA providers. Defendants submitted claims for payment to Medicare, Medicaid, CHAMPUS, and CHAMPVA for services and supplies.

20. At all times relevant to this Complaint, Medicare, Medicaid, CHAMPUS, and CHAMPVA constituted a significant source of revenue for Defendants.

21. All of the conduct alleged in this Complaint is alleged to have occurred "knowingly" or with reckless disregard, as those terms are defined in the False Claims Act, 31 U.S.C. § 3729 and related case law.

## FACTUAL ALLEGATIONS

22. Dr. Colapinto worked for Defendants as a licensed audiologist until May 2017, when she took a leave of absence due to being diagnosed with breast cancer.

23. What Dr. Colapinto observed during her employment, and then during her absence and the subsequent treatments she received from Defendants, caused

her to question the lawfulness of Defendants' actions. She resigned from employment in July 2017. The following is a brief statement of the issues she observed.

### Improper Billing for Testing Done by Unlicensed "Audiologists"

24. Dr. Colapinto was the only audiologist employed by Defendants.

25. Upon her departure, she learned that Defendants were continuing to perform services that only a licensed audiologist was permitted to perform.

26. In fact, Defendants used Dr. Colapinto's name without her authorization on documents for services that she did not perform. These included audiology diagnostic exams for numerous elderly patients covered by Medicare, including JO (on May 8, 2017), SS (on June 6, 2017), RW (on May 10, 2017), FB (on May 8, 2017), FM (on May 8, 2017), RC (on May 9, 2017), SH (on May 9, 2017), CC (on July 6, 2017) among others. This began to occur following her departure in the months of May, June, July and August, and it is believed to have proceeded longer.

27. During Dr. Colapinto's medical leave, Defendants utilized unlicensed individuals, primarily Chelsea Wagner ("Wagner"), to perform this audiology testing in violation of Medicare rules.

7

28. Audiology claims submitted to Medicare must be performed by a licensed audiologist, and Medicare will not reimburse claims for services provided by unlicensed individuals.

29. Under 42 U.S.C. § 1395x(11), "audiology services" are defined as "such hearing and balance assessment services furnished by a qualified audiologist as the audiologist is legally authorized to perform under State law...as would otherwise be covered if furnished by a physician."

30. The term "qualified audiologist" means "an individual with a master's or doctoral degree in audiology who-- (i) is licensed as an audiologist by the State in which the individual furnishes such services, or (ii) in the case of an individual who furnishes services in a State which does not license audiologists, has successfully completed 350 clock hours of supervised clinical practicum (or is in the process of accumulating such supervised clinical experience), performed not less than 9 months of supervised full-time audiology services after obtaining a master's or doctoral degree in audiology or a related field, and successfully completed a national examination in audiology approved by the Secretary." 41 U.S.C. § 1395x(11)(4)(B).

31. Under 42 C.F.R. § 410.32(b)(2)(ii), only diagnostic tests performed by a qualified audiologist are exempt from physician supervision requirements.

32. "Medicare is not authorized to pay for [audiological tests] when performed by audiological aids, assistants, technicians, or others who do not meet the qualifications." Medicare Benefit Policy Manual, Ch. 15, § 80.3.1.

### Comprehensive Code Billing for Services Not Rendered or Medically Necessary

33. Dr. Colapinto's experience with her own treatment caused her to reflect on concerns she had when she first joined the practice.

34. When Dr. Colapinto began her employment in February 2016, she was instructed by the bookkeeper, Crystal, to circle the "comprehensive code," 92588, for every patient. This code reflected a comprehensive exam rather than a limited exam. The comprehensive exam provided more details and used certain equipment that the office did not even had.

35. Dr. Colapinto refused to circle the comprehensive exam because this was clear upcoding and billing for services not performed or necessary. However, based on the bookkeeper's urging, Dr. Colapinto believes that this upcoding was done prior to her working at the office and that this scheme likely occurred in other areas of their billing practice.

### Improper Inducements to Medicare Beneficiaries

36. Defendants engaged in significant marketing efforts in order to sell hearing aids, including offering inducements to individuals to get them in the door.

9

37. For example, while Dr. Colapinto was employed in 2016, Defendants sent marketing mailers to the community offering a free butterball turkey to anyone who came in for a free hearing test.

38. Once the individuals agreed to participate in the "free" hearing test, Defendants would persuade them to stay for more in-depth evaluation

39. Under 42 U.S.C. § 1320a-7b(b)(2), the Anti-Kickback Statute, "[w]hoever knowingly and willfully offers or pays any remuneration…to any person to induce such person – (A) to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or (B) to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program" is guilty of a felony, and a claim that incudes items or services resulting from such a violation is considered a false claim under the Act.

40. Moreover, under 42 U.S.C. § 1320a-7a(a)(5), the Beneficiary Inducement Statute, any person who offers to, or transfers, remuneration to any individual eligible for benefits under Medicare or a State health care program that "such person knows or should know is likely to influence such individual to order or receive from a particular provider, practitioner, or supplier any item or service

10

for which payment may be made, in whole or in part" under Medicare or a state health care program is subject to civil penalty for each item or service.

41.   Upon information and belief, these inducements violate these statutes because Defendants are attempting to influence beneficiaries and/or physicians to allow them to bill Medicare for audiological testing.  Such practice is expressly prohibited.  According to the American Speech-Language Hearing Association, "providing free hearing tests when you are a Medicare provider appears to be a clear violation of Medicare rules and regulations.  Medicare prohibits offering free services such as hearing testing as an inducement to generate other services such as diagnostic audiologic services."  ASHA, Medicare Frequently Asked Questions: Audiology, Medicare Prohibitions, *available at* *https://www.asha.org/practice/reimbursement/medicare/audiology-medicare-prohibitions-FAQs/* (last accessed Feb. 27, 2019).

## COUNT I
## FALSE CLAIMS ACT VIOLATIONS

(False Claims Act 31 U.S.C. § 3729(a)(1)(A))
(Georgia False Medicaid Claims Act O.C.G.A. § 49-4-168.1(a)(1))

42.   The prior allegations of this Complaint are incorporated herein by reference.

43.   Defendants, by and through their agents, officers and employees, presented and caused to be presented to officers or employees of the United States

and State of Georgia false or fraudulent claims for payment or approval, in violation of 31 U.S.C. § 3729(a)(1)(A) and O.C.G.A. § 49-4-168.1(a)(1).

44. The United States and State of Georgia have been damaged as a result of Defendant's violations of the False Claims Act and Georgia False Medicaid Claims Act in an amount to be proven at trial. The United States and State of Georgia is entitled to this sum as reimbursement for monies obtained by the Defendants for fraudulent claims submitted to the United States.

45. The government is entitled to three times the total damages sustained as a result of Defendant's violations of 31 U.S.C. § 3729(a) and O.C.G.A. § 49-4-168.1(a).

46. The government is entitled to a civil penalty as required by 31 U.S.C. § 3729(a), 42 U.S.C. § 1395nn, and 42 U.S.C. § 1320a-7b(b), for each of Defendant's false and/or fraudulent claims.

47. Relators are entitled to reasonable costs and attorneys' fees pursuant to 31 U.S.C. § 3730 (d)(1) and O.C.G.A. § 49-4-168.1(a), (c).

48. Relator and government are entitled to and plead for all damages recoverable by law, including but not limited to, reasonable costs and attorneys' fees.

## COUNT II
## FALSE CLAIMS ACT VIOLATIONS

(False Claims Act 31 U.S.C. § 3729(a)(1)(B))
(Georgia False Medicaid Claims Act O.C.G.A. § 49-4-168.1(a)(2))

49. The prior allegations of this Complaint are incorporated herein by reference.

50. Defendants, by and through its agents, officers and employees, presented or caused to be presented to officers and employees of the United States and State of Georgia false records or statements to get false claims paid in violation of 31 U.S.C. § 3729 (a)(1)(B) and O.C.G.A. § 49-4-168.1(a)(2).

51. The United States and State of Georgia have been damaged as a result of Defendant's violations of the False Claims Act and Georgia False Medicaid Claims Act in an amount to be proven at trial. The United States and State of Georgia is entitled to this sum as reimbursement for monies obtained by the Defendants for fraudulent claims submitted to the United States.

52. The government is entitled to three times the total damages sustained as a result of Defendant's violations of 31 U.S.C. § 3729(a) and O.C.G.A. § 49-4-168.1(a).

53. The government is entitled to a civil penalty as required by 31 U.S.C. § 3729(a), 42 U.S.C. § 1395nn, and 42 U.S.C. § 1320a-7b(b), for each of Defendant's false and/or fraudulent claims.

54. Relators are entitled to reasonable costs and attorneys' fees pursuant to 31 U.S.C. § 3730 (d)(1) and O.C.G.A. § 49-4-168.1(a), (c).

55. Relator and government are entitled to and plead for all damages recoverable by law, including but not limited to, reasonable costs and attorneys' fees.

## COUNT III
## FALSE CLAIMS ACT VIOLATIONS

(False Claims Act 31 U.S.C. § 3729(a)(1)(G))
(Georgia False Medicaid Claims Act O.C.G.A. § 49-4-168.1)

56. The prior allegations of this Complaint are incorporated herein by reference.

57. Defendants, by and through its agents, officers and employees, knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government in violation of 31 U.S.C. § 3729(a)(1)(G) and O.C.G.A. § 49-4-168.1(a)(7).

58. The United States and State of Georgia have been damaged as a result of Defendant's violations of the False Claims Act and Georgia False Medicaid Claims Act in an amount to be proven at trial. The United States and State of

Georgia is entitled to this sum as reimbursement for monies obtained by the Defendants for fraudulent claims submitted to the United States.

59.  The government is entitled to three times the total damages sustained as a result of Defendant's violations of 31 U.S.C. § 3729(a) and O.C.G.A. § 49-4-168.1(a).

60.  The government is entitled to a civil penalty as required by 31 U.S.C. § 3729(a), 42 U.S.C. § 1395nn, and 42 U.S.C. § 1320a-7b(b), for each of Defendant's false and/or fraudulent claims.

61.  Relators are entitled to reasonable costs and attorneys' fees pursuant to 31 U.S.C. § 3730 (d)(1) and O.C.G.A. § 49-4-168.1(a), (c).

62.  Relator and government are entitled to and plead for all damages recoverable by law, including but not limited to, reasonable costs and attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Relator prays that:

(a)  Defendants each be assessed a civil penalty for each act committed in violation of the False Claims Act and Georgia False Medicaid Claims Act;

(b)  Defendants each be held jointly and severally liable for three times the actual damages suffered by the Federal Government as a result of the Defendants' violations;

15

(c) Relator be awarded 30% of the proceeds of this action and any alternate remedy or settlement of any such claim;

(d) Defendants each be assessed jointly and severally an additional sum sufficient to compensate Relator for all expenses of litigation incurred in this action, including reasonable attorneys' fees; and

(e) Any and all other relief as the Court deems just and proper.

Respectfully submitted this 8th day of October, 2020.

/s/ James M. McCabe
James M. McCabe
Georgia Bar No. 724618
The McCabe Law Firm, LLC
3355 Lenox Road
Suite 750
Atlanta, GA 30326
Office: (404) 250-3233
Fax: (404) 400-1724

Mike Bothwell
Georgia Bar No. 069920
Mike@whistleblowerlaw.com
Bothwell Law Group
304 Macy Drive
Roswell, Georgia 30076
Ph: 770-643-1606
Fax: 770-643-1442

Attorneys for Relator Kathy Colapinto