UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| United States ex rel. KATHY COLAPINTO, | ) ) ) | CIVIL ACTION FILE NO. 1:20-cv-04156-VMC |
| Plaintiff-Relator, | ) ) | |
| v. | ) ) | |
| EAR, NOSE & THROAT PLASTIC SURGERY CENTER, P.A., PERSAUD ENTERPRISES, ADVANCED AUDIOLOGY AND HEARING AID CENTER, INC., and NEIL PERSAUD, | ) ) ) ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

## BRIEF IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Come now the Defendants Ear, Nose & Throat Plastic Surgery Center, P.A., Persaud Enterprises, Advanced Audiology and Hearing Aid Center, Inc., and Neil Persaud (collectively "Defendants"), by and through counsel, and pursuant to Fed. R. Civ. P. 56, hereby submit this brief in support of Defendants' Motion for Summary Judgment. Defendants respectfully move this Court to grant Summary Judgment in their favor against the First Amended Complaint ("FAC"). As grounds, the Defendants state that they are entitled to judgment as a matter of law and that the

evidence in the record is legally insufficient to establish a violation of the False Claims Act ("FCA"). Specifically, the evidence in the record merely describes, at best, a hypothetically fraudulent scheme while failing to identify reliable evidence of a single false claim, or any damages related to any singular claim submitted to the Government, which is an essential element of the FCA. Further, the record fails to establish the requisite subjective knowledge scienter that is required under the FCA.

## I. Introduction

Plaintiff's unsworn, First Amended Complaint [Dkt. 49] asserts claims for violations of the Federal and Georgia False Claims Act. Now, after seven years of litigation including multiple government investigations of Relator's allegations, each resulting in no recoupment or findings of overbilling, fraudulent billing, or otherwise illegal actions, and expansive discovery in this action, the record of this case is complete and this matter is ripe for the review of its merits. As explained below and supported by its attached Statement of Material Facts and supporting evidence, Defendants are entitled to summary judgment on all three claims.

## II. Statement of Relevant Facts

Defendants incorporate their statement of uncontested material facts and accompanying exhibits, filed contemporaneously with their motions.as if stated herein.

## III. Summary Judgment Standard

The Federal Rules of Civil Procedure allow for Summary Judgment where there is no genuine dispute as to facts and the moving party is entitled to judgment as a matter of law. Fed R. Civ. P. 56. The Rule "provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). In determining whether the dispute as to material fact is *genuine*, the standard is whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. A fact is "material" if it is "a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial burden of showing, by reference to materials in the record, that there is no genuine dispute as to any material fact that should be decided at trial. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). Notably, "[a]llegations in an unsworn complaint are not evidence for purposes of summary judgment and, thus, cannot be considered." *Chambliss v. Buckner,* 804 F. Supp. 2d 1240, 1248 (M.D. Ala. 2011). Once the moving party has adequately supported its motion, the non-movant then has the burden of coming forward with specific facts showing a genuine dispute. *Matsushita Elec. Indus. Co.*

3

*v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no "genuine [dispute] for trial" when the record as a whole could not lead a rational trier of fact to find for the nonmoving party. *Id.*; *see also Nebula Glass Int'l, Inc. v. Reichhold, Inc.*, 454 F.3d 1203, 1210 (11th Cir. 2006) (stating the nonmoving party cannot survive summary judgment by pointing to "a mere scintilla of evidence"); *Stephens v. Mid–Continent Cas. Co.*, 749 F.3d 1318, 1321 (11th Cir. 2014) ("If the non-movant's evidence is 'merely colorable' or 'not significantly probative,' summary judgment may be granted.").

The present case presents a dispute that arises under the False Claims Act ("FCA") and nearly identical Georgia False Medicaid Claims Act. 31 U.S.C. § 3729(a)(1)(A); O.C.G.A. § 49-4-168.1(a)(1). While such claims are, admittedly, heavily fact-dependent, they are still appropriate for the scrutiny of summary judgment. In fact, the United States Supreme Court took this position when it rejected the "assertion that materiality is too fact intensive for courts to dismiss False Claims Act cases on a motion to dismiss or at summary judgment." *Universal Health Servs., Inc. v. U.S.,* 136 S. Ct. 1989, 2003 n.6 (2016). The *Universal Health* Court went on to recognize that the elemental standard for FCA liability "is a familiar and rigorous one" and wholly appropriate for summary judgment review, despite its fact dependency. *Id.*; *see also Road Sprinkler Fitters Union 669, U.A., AFL-CIO v. Dorn Sprinkler Co.,* 669 F.3d 790, 793-794 (6th Cir. 2012) (recognizing that the fact-

intensive alter-ego determination "is not readily distinguishable from most determinations made on summary judgment.").

The present case boils down to a singular, simple question: could Defendants appropriately bill government payors for audiology tests and services when anyone other than an audiologist directly performed the test or provided the service? The Relator bases her entire theory of liability on a flawed foundational premises: that audiology tests and services can only be billed to government payors when a licensed audiologist individually performs the service. This theory of liability fails on its face when the entire applicable statute and billing guiddance reviewed, as opposed to the self-serving, misleading, andselective quotes included by Relator in her FAC. Furthermore, Relator has failed to satisfy her duty to identify the purportedly false claims with any specificity or prove damages through any recognized methodology, having chosen to forego using her purported expert to identify the alleged false claims that she seeks to act upon. While Relator identified a number of patients in her FAC as purported examples of false claims, at her deposition, Relator testified that these patients did not represent actual false claims. *See e.g. Statement of Material Facts at 31.* Further, Relator's expert report did not identify any false claims. Statement of Material Facts at 69-71. As a result, Relator is left with no articulable basis for her supposedly identified false claims at issue in this case and the essential element of damages and falsity are left unsatisfied. *See Chambliss,* 804

F. Supp. 2d at 1248 ("Allegations in an unsworn complaint are not evidence for purposes of summary judgment and, thus, cannot be considered.") As such, the Relator has not created a record which contains evidence from which "a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. Summary judgment is appropriate in this case as a matter of law.

**IV. ARGUMENT**

In order to establish a violation of the FCA, Relator must establish the following three elements:

> (1) a false or fraudulent claim; (2) which was presented, or caused to be presented, by the defendant to the United States for payment or approval; (3) with the knowledge that the claim was false.

*U.S. ex rel. Bane v. Breathe Easy Pulmonary Servs., Inc.,* 597 F. Supp. 2d 1280, 1286 (M.D. Fla. 2009) (citing *United States ex rel. Walker v. R & F Props. of Lake County, Inc.,* 433 F.3d 1349, 1355 (11th Cir. 2005); 31 U.S.C. § 3729(a)(1)-(2)). Additionally, "[t]o prevail in a *qui tam* action under the False Claims Act (FCA), a relator must provide details of a link between improper practices and the submission of false claims." *United States ex rel. Phalp v. Lincare Holdings, Inc.*, 116 F. Supp. 3d 1326, 1343 (S.D. Fla. 2015), aff'd as modified *sub nom. United States ex rel. Phalp v. Lincare Holdings, Inc.*, 857 F.3d 1148 (11th Cir. 2017) (discussing 31 U.S.C.A. § 3729).

The FCA does not address or deal with all non-compliance or improper practices by health care providers. It is not a "blunt instrument to be used for every false certification of compliance with the vast and complicated Medicare program." *Id.* The FCA is "not a vehicle to police technical compliance with complex federal regulations." *United States ex rel. Ortolano v. Amin Radiology*, Case No. 5:10–CV–583–OC–PRL, 2015 WL 403221, at *3 n. 3 (M.D. Fla. Jan. 28, 2015). The FCA also does not "create liability merely for a health care provider's disregard of Government regulations or improper internal policies." *Clausen*, 290 F.3d 1301, 1311 (11th Cir. 2002).

The fact that there may have been improper practices or even "a violation of the laws governing Medicare ... is not enough, standing alone, to sustain a cause of action under the False Claims Act." *Ortolano*, 2015 WL 403221, at *3 n. 3. Instead, to prevail, a relator must provide details of a link between improper practices and the provider knowingly asking the Government to pay amounts it does not owe. *Clausen*, 290 F.3d at 1311; *see also United States ex rel. Klusmeier v. Bell Constructors, Inc.,* 469 Fed. Appx. 718, 721 (11th Cir. 2012). In short, there must be a falsehood that affects the government's willingness to pay, because "[i]mproper practices standing alone are insufficient." *Ortolano*, 2015 WL 403221, at *3 n. 3. *(internal cites omitted)*.

### a. The Claims at issue are not false because Relator's proffered definition of who may furnish and seek reimbursement for Audiology Services is overly exclusive and contrary to applicable statutes, case law, and the relevant Medicare billing guidance.

In her FAC, Relator claims that "Audiology claims submitted to Medicare must be performed by a licensed audiologist, and Medicare will not reimburse claims for services provided by unlicensed individuals." (Doc. 49 at ¶ 49). As an initial matter, this unsworn declaration is not evidence and cannot be considered on summary judgment. *Chambliss,* 804 F. Supp. 2d at 1248. Nevertheless, this framework of Relator's argument creates two initial thresholds that Relator must clear in order to hold Defendants liable for any particular claim: first, Medicare guidelines must establish that only audiologists can bill for audiology claims, and second, Medicare guidelines must establish that only licensed audiologists can be reimbursed for audiology claims. No evidence in the record supports either of these claims and, in fact, significant evidence refutes them.

### i. *The Social Security Act and Medicare guidance and guidelines permit multiple medical professionals other than audiologists to bill for and receive reimbursement for audiology claims.*

The Medicare Benefit Policy Manual ("Medicare Policy Manual") is issued to administer and implement the Medicare and Medicaid program. Statement of Material Facts at 37-39. Under a plain reading of Chapter 15, Section 80.3 of the Medicare Policy Manual, audiology services are defined as "hearing and balance assessment services…regardless of whether they are furnished by an audiologist,

8

physician, nonphysician practitioner (NPP), or hospital." (Medicare Policy Manual, Chapter 15, Section 80.3 - Audiology Services (Rev. 132, Issued: 09-03-10, Effective: 09-30-10, Implementation: 09-30-10) is attached as Exhibit 9).[1]

The Medicare Policy Manual at Chapter 15, § 80.3 describes how Audiology Services are generally furnished and reimbursed in two separate and distinct ways, either by physicians as "other diagnostic tests" <u>or</u> by audiologists pursuant to the authority granted in 18 U.S.C. 1861(ll) entitled Speech-Language Pathology Services; Audiology Services. Statement of Material Facts at 39-44.

Thus, the Medicare Policy Manual makes clear that individuals encompassed by the definition of 'physician'[2] as well as 'qualified audiologists'[3] may be reimbursed for furnishing Audiology Services. Medicare Policy Manual at Chapter 15, § 80.3. Further, when furnished by a physician in an office or hospital outpatient

---

[1] As used herein, "Audiology Services" shall have the meaning defined in the Medicare Policy Manual at Chapter 15, § 80.3.

[2] The Social Security Act defines the term 'physician' expansively, including licensed doctors of "medicine or osteopathy...dental surgery…podiatric medicine…optometry[,]" and even chiropractors in the definition of who can perform "any function or action" described in the Social Security Act. 18 U.S.C. 1861(r). Audiologists are not included in the definition of 'physician' in the Social Security Act. *Id.* Statement of Material Facts at 45.

[3] Audiologists are only defined in section 1861(ll) of the Social Security Act, which defines one specific subset of covered testing under the Social Security Act: Speech-Language Pathology Services; Audiology Services. 18 U.S.C. 1861(ll). Specifically, §(ll)(4)(B) defines a "qualified audiologist" as someone with a masters or doctoral degree in audiology who is licensed by the state in which services are rendered or otherwise qualified by a specified level of experience. *Id.* Statement of Material Facts at 46.

department, Audiology Services may be reimbursed when furnished by non-physician technicians or assistants "under the appropriate level of supervision of a physician as established in 42 CFR 410.32(b)(1) and 410.28(e)." Medicare Policy Manual at Chapter 15, § 80.3; Weiss Report at 2. [insert fact re: supervision level and techs].

Interpreting the Medicare Benefit Manual, especially in light of the statutes cited therein, to provide that reimbursement may be sought for Audiology Services furnished by physicians, qualified audiologists, and those under an appropriate level of supervision of a physician is consistent with one of the most basic canons of statutory interpretation, "that [a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Rubin v. Islamic Republic of Iran*, 583 U.S. 202, 213 (2018), citing *Corley v. United States*, 556 U.S. 303, 314 (2009) (internal quotation marks omitted).

Relator premises her claim on omitting large swaths of the applicable statutes, Medicare Benefit Manual, and other guidance such that all references to Audiology Services being provided by a "physician, nonphysician practitioner (NPP), hospital[,]" or other professional under the supervision of physician as permitted under the Medicare Benefit Manual be ignored. Statement of Material Facts at 38; Weiss Report at 1. This tortured reading of the SSA statute and Medicare Policy Manual would render multiple passages of the statute and guidance superfluous and

void, something not permitted under the law. *Rubin*, 583 U.S. at 314. Relator's purported rationale would also have this Court ignore all statutes and CMS guidance regarding the physician supervision required for technicians who perform audiology tests as explicitly contemplated in the Medicare Benefit Manual.[4] This argument fails for the same reason.

Under Relator's unfounded and legally deficient interpretation of the SSA and Medicare guidelines, the only medical professional who could bill for audiology services are audiologists – not physicians like Dr. Persaud, not qualified physicians and nurse practitioners, and not audiology assistants and trainees like Chelsea Wagner who Relator specifically trained and authorized to perform tests on her behalf while Relator was away from the office. Statement of Material Facts at 26-28. Under Relator's logic, audiology services are somehow so complex and specialized that physicians with doctoral level training are unqualified to provide such services while audiologists with master's level training are. This baseless proclamation is not supported by statute, Medicare guidance, Relator's own purported expert, Defendants' expert, or common sense. Relator's "interpretation"

---

[4] *See, e.g.,* Medicare Benefit Manual, describing how, when furnished by a physician in an office or hospital outpatient department, Audiology Services must be "furnished under the appropriate level of supervision of a physician as established in 42 CFR 410.32(b)(1) and 410.28(e)." Statement of Material Facts at 40. Weiss Report at 2.

is nothing but a money grab: if she can lump every audiological service ENTPSC ever provided as one required to be performed by an audiologist, then her potential award as a result of this lawsuit grows exponentially. Her definition and interpretation of who may bill and be reimbursed for furnishing Audiology Services cannot pass any kind of muster and should be rejected as unsupported by the record evidence, applicable statutes, and Medical Billing guidance.

> **b. The Defendants are entitled to summary judgment because the scienter element is not satisfied in this case.**

A FCA violation is not a strict liability offense; "[s]cienter is a necessary element of a claim under both 31 U.S.C. § 3729(a)(1)(A) and (B)." *Phalp* at 1358. "For liability to attach, the relator must show that the defendant acted "knowingly," which the Act defines as either "actual knowledge," "deliberate ignorance," or "reckless disregard." *Phalp*, 116 F. Supp. 3d at 1343. "Although proof of a specific intent to defraud is not required [] the statute's language makes plain that liability does not attach to innocent mistakes or simple negligence." *Id.* at 1358. Instead, "[l]iability attaches to only those who act in gross negligence – those who fail to make such inquiry as would be reasonable and prudent to conduct under the circumstances." *Id.* (internal citations and quotation marks omitted). In other words, "Congress did not intend to turn the False Claims Act, a law designed to punish and deter fraud, into a vehicle either 'punish[ing] honest mistakes or incorrect claims submitted through mere negligence" or imposing 'a burdensome obligation' on

12

government contractors...." *Id.*, referencing *Ragsdale v. Rubbermaid, Inc.,* 193 F.3d 1235, 1237 n.1 (11th Cir.1999), *citing United States v. Sci. Applications Int'l Corp.,* 626 F.3d 1257, 1274 (D.C. Cir. 2010) (quoting S. Rep. 99–345 at 6, 19).

This scienter distinction is very important in this case as it has been long recognized that "the *sine qua non* of a False Claims Act violation" is the submission of the fraudulent claim itself. *U.S. ex rel. Bane v. Breathe Easy Pulmonary Servs., Inc.,* 597 F. Supp. 2d 1280 (M.D. Fla. 2009), *citing Corsello v. Lincare, Inc.,* 428 F.3d 1008, 1012 (11th Cir. 2005)). The FCA requires a showing that the defendant made "the false record or statement to get a false or fraudulent claim paid or approved by the Government." *Allison Engine Co., Inc. v. U.S. ex rel. Sanders*, 553 U.S. 662, 668 (2008) (internal citations omitted). Thus, two essential elements of an FCA violation are (1) the falsity of the claim and (2) the defendant's knowledge of the claim's falsity." *Schutte,* 598 U.S. at 747 (*internal quotes omitted*.) As it relates to the "knowing" element, the *Schutte* Court held that "[t]he FCA's scienter element refers to respondents' knowledge and subjective beliefs—not to what an objectively reasonable person may have known or believed." *Id.* at 749. Therefore, pursuant to the Supreme Court's recent holding in *Schutte*, it is not enough to establish liability by showing that a person's submission of a claim for payment was subjectively unreasonable; instead, the FCA mandates a requisite showing that a person submitted a claim that they subjectively knew was false.

In the present case, the evidence in the record is insufficient to establish that the Defendants knowingly submitted false claims. Statement of Material Facts at 28, 57, 58, 70, 71. Instead, the record reflects that Defendants submitted claims for audiology services performed by audiologists, physicians, or assistants and technicians under the direct supervision of physicians as permitted in the guidelines. Furthermore, in the event this Court finds that Relator's definition of who may bill for Audiology Services is correct, the record reflects that Dr. Persaud, the CEO and owner of ENTPSC during the time period alleged in Relator's FAC, consulted with a large public hospital when he first set up his practice and thereafter took reasonable steps to inform himself and his staff of appropriate billing guidelines. Statement of Material Facts at 52-55; Allen Affidavit at 5-9 These steps are far from the gross negligence or reckless disregard standard necessary to establish FCA liability. *See, e.g., Phalp* at 1358.

### i. *Relator has not drawn the necessary link between the supposed improper billing practices and any Defendant asking the Government to pay amounts it does not owe.*

Even assuming, *arguendo*, that Relator could meet her burden of demonstrating that Defendants engaged in improper billing practice or even violated "laws governing Medicare[,] [that] ... is not enough, standing alone, to sustain a cause of action under the False Claims Act." *Ortolano*, 2015 WL 403221, at *3 n.3. Instead, to prevail, Relator must provide details of the link between the improper

practices and Defendants knowingly asking the Government to pay amounts it does not owe. *Clausen*, 290 F.3d at 1311; *see also United States ex rel. Klusmeier v. Bell Constructors, Inc.,* 469 Fed. Appx. 718, 721 (11th Cir. 2012). Relator cannot do so here based on the evidence in the record.

As explained above, a key failing in Relator's theory of liability is that Medicare guidelines do not differentiate in the payment of audiology claims like those identified in the FAC based on whether they are performed by an audiologist <u>or</u> a physician <u>or</u> other subordinate medical professional who is appropriately qualified and supervised by an audiologist or physician as specified in the Medicare billing guidelines. Nowhere in Relator's FAC, deposition, or purported expert report does Relator claim that reimbursement rates were different for Audiology Services depending on whether an audiologist, physician, or other appropriately supervised medical professional performed them. Statement of Material Facts at 6, 70-71. Consequently, there is no evidence in the record supporting the conclusion that the licensure status of an otherwise qualified individual who performed a given audiology test affected the reimbursement amount. This failure to draw the link between Defendants' reimbursement and the supposed falsehood is yet another fatal flaw to Relator's complaint. *Clausen*, 290 F.3d at 1311.

### c. Persaud Enterprises and Advanced Audiology and Hearing Aid Center, Inc. are not liable under the FCA because they did not submit any claims, much less false claims, for reimbursement.

Among other requirements described above, in order to satisfy the requisite showing that a defendant is liable under the FCA, an FCA plaintiff must show evidence the Defendant "presented, or caused to be presented" a false claim to "the United States for payment or approval." *Bane v. Breathe Easy,* 597 F. Supp. 2d at 1285 (citing *United States ex rel. Walker v. R & F Props. of Lake County, Inc.,* 433 F.3d 1349, 1355 (11th Cir. 2005); 31 U.S.C. § 3729(a)(1)-(2)). Neither Relator nor any other person has ever been employed by either Persaud Enterprises or AAHAC for the purpose of providing medical or audiological services at ENTPSC. Statement of Material Facts at 1, 61-63, 65-68. Neither Persaud Enterprises nor AAHAC has ever submitted any claims, much less false claims, for reimbursement for audiological services from government payors. *Id.*

The Relator has put forth no evidence Persaud Enterprises or AAHAC submitted any claims for reimbursement, much less any purportedly false claims, to government payors with the requisite scienter. Even more so, the United States Supreme Court has recognized that an FCA defendant cannot be held liable for the conduct of other actors because "[t]he Act, in short, penalizes a person for his own acts, not for the acts of someone else." *U.S. v. Bornstein,* 423 U.S. 303, 312 (1976). It follows, therefore, that the record in this case is inconsistent with any reasonable finding that the PE or AAHAC violated 31 U.S.C. § 3729(a)(1)(A) or O.C.G.A. §

49-4-168.1(a)(1) by filing a false claim. As such, summary judgment is proper in this case as to each of these Defendants.

### d. Relator has not identified any overpayment or damages suffered as a result of Defendants' supposedly false claims.

Relator has not identified any overpayment or damages suffered as a result of Defendants' supposed illicit schemes, despite multiple opportunities and specific requests to do so. Worse yet, Relator chose *not* to engage an expert to perform any review of the claims at issue in this case to determine whether there was any overpayment or any damages. Although Relator provided Defendants with a report from a Dr. Kerry Cohen via an email with the subject: Relator's Expert Report- Colapinto v. ENTPSC, Relator never formally identified Dr. Cohen as a witness, much less an expert in the case via an interrogatory response, supplement to initial disclosures, or Notice of Filing Expert Report; furthermore, Relator did not supplement or clarify her intentions with respect to Dr. Cohen and Rule 26(a)(1)(A), 26(a)(2), and 26(e) despite a specific request that she do so. (Jan. 14, 2025 request for supplementation attached as Exhibit 12). Indeed, Dr. Cohen's purported expert report is completely devoid of any mention of damages or fraudulent billing by Defendants. Statement of Material Facts at 70-71. Consequently, Relator has not produced or identified any evidence in the record of any overpayment or fraud suffered as a result of Defendants' supposed illicit schemes.

Relator's claims fail at the first instance – she has not established the existence of a false claim, the essential element of her case. As such, her case is not viable. Put succinctly, the Relator cannot proceed with a viable False Claims Act action without identifying any false claims. As previously noted, the submission of the claim is "the *sine qua non* of a False Claims Act violation." *Bane v. Breathe Easy,* 597 F. Supp. 2d at [pg]. Actual evidence of a submitted false claim is indispensable to establishing FCA liability. Because the Relator steps into the shoes of the government after declination, the Relator must assume the government's burden of proof and be able to show actual evidence of false claims that were submitted and paid, and not merely some scheme or artifice. Without specifying any false claims or valid methodology and calculation of damages, this case cannot proceed and summary judgment is proper.

## V. CONCLUSION

The long and winding litigation of this case has yielded little in the way of evidence. Relator has failed to identify and present definitive evidence of a single false claim. Instead, she speculates with broad assertions that are directly contradicted by statute and Medicare Policy Guidance and unsupported by any evidence in the record. At best, she has accused Defendants of a scheme, but articulating a theory is a far cry from presenting record evidence of any false claims. At this end stage of the litigation, a theory will not suffice. To defeat summary

18

judgment, the party opposing the motion must present affirmative evidence to support his or her position.

The Supreme Court recognized that the FCA standards are "familiar and rigorous" and not so fact dependent as to preclude summary judgment. *Univ. Health Servs.*, 136 S. Ct. at 2003 n.6. In the present case, the evidence in the record does not satisfy the FCA's "familiar and rigorous" elements, and therefore summary judgment is appropriate.

For the foregoing reasons, Defendants respectfully request that the Court grant summary judgment to Defendants on all counts of Plaintiff's Amended Complaint and that the Court further award costs and fees as the Court as permitted under law and the Court deems appropriate.

Respectfully submitted this 11th day of March, 2025.

/s/ *Emily C. Ward*
Emily C. Ward
Georgia Bar No. 500999
eward@continuumlg.com
CONTINUUM LEGAL GROUP LLP
5605 Glenridge Drive, Suite 600
Atlanta, GA 30342
Telephone: (470)763-6242

*Attorney for Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), the undersigned certifies that this submission was prepared using Times New Roman 14 point font in accordance with Local Rule 5.1(C).

## CERTIFICATE OF SERVICE

I hereby certify that on the date below, the foregoing document was served by filing it with the Court's CM/ECF system, which will send electronic notice of such filing to all counsel of record.

Date: March 11, 2025

                                              */s/ Emily C. Ward*
                                              Emily C. Ward
                                              Attorney for Defendants